UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRENDA ELISABETH ULLOA-SALGUERO, <br><br> Petitioner, <br><br> -against- <br><br> KENNETH GENALO, *NYC Director Enforcement & Removal Operations Immigration and Customs Enforcement (ICE)*, TODD LYONS, *Acting Director, U.S. Immigration and Customs Enforcement*, MARKWAYNE MULLIN, *in his official capacity as Secretary of the Department of Homeland Security*, and TODD BLANCHE, *in his Official Capacity as Acting Attorney General, U.S. Department of Justice*,[1] <br><br> Respondents. | USDC SDNY <br> DOCUMENT <br> ELECTRONICALLY FILED <br> DOC #:_____ <br> DATE FILED: ___7/17/26___ <br><br> 1:26-cv-216-MKV <br><br> <u>OPINION AND ORDER DENYING</u> <br> <u>PETITION FOR HABEAS CORPUS</u> |

MARY KAY VYSKOCIL, United States District Judge:

Petitioner Brenda Elisabeth Ulloa-Salguero is "a native of Honduras and a citizen of Honduras" [ECF No. 1 ("Pet.") ¶ 4]. She first illegally entered the United States in 2012, at which time she was promptly removed pursuant to a Notice and Order of Expedited Removal [ECF No. 14 ("Marcellin Decl.") ¶¶ 3, 5]. Petitioner thereafter "again" illegally entered the United States in 2019. Marcellin Decl. ¶ 6. Her earlier order of removal was reinstated and, thereafter, she was detained "based upon her reinstated removal order." *Id.* ¶ 10.

Petitioner has now filed a petition for a writ of habeas corpus [ECF No. 1 (the "Petition")], omitting any mention of her previous removal order (and removal) and seeking her immediate release or a bond hearing pursuant to 8 U.S.C. § 1226(a) ("Section 1226(a)"). However, because she has been ordered removed from the United States, Petitioner is lawfully detained pursuant to

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Secretary of the Department of Homeland Security Markwayne Mullin is automatically substituted for former Secretary Kristi Noem, and acting Attorney General Todd Blanche is automatically substituted for former Attorney General Pamela Bondi.

8 U.S.C. § 1231(a) ("Section 1231(a)").  Accordingly, for the reasons set forth below, the Petition is DENIED in its entirety.

## I.   BACKGROUND[2]

Petitioner Brenda Elisabeth Ulloa-Salguero is "a native of Honduras and a citizen of Honduras" [ECF No. 1 ("Pet.") ¶ 4].  She illegally crossed the border into the United States in September 2012 [ECF No. 14 ("Marcellin Decl.") ¶ 3].  United States Customs and Border Protection ("CBP") encountered Petitioner, determined that she had illegally entered the country, and took her into custody.  Marcellin Decl. ¶ 3.  In October 2012, Petitioner was removed to Honduras pursuant to a Notice and Order of Expedited Removal [ECF No. 15-1 ("Notice and Order of Expedited Removal")].  *Id.* ¶ 5.[3]

Thereafter, in April 2019, Petitioner "again" illegally entered the United States.  Marcellin Decl. ¶ 6; Pet. ¶¶ 3, 4 (acknowledging that Petitioner entered the U.S. "unlawfully," "without inspection").[4]  This time, she brought her minor child.[5]  *Id.*; *cf.* Pet. ¶ 5.  Petitioner was taken into

---

[2] The background is drawn from the parties' submissions, including the Petition [ECF No. 1 (the "Petition" or "Pet.")], the Declaration of Supervisory Detention and Deportation Officer Merlin Marcellin [ECF No. 14 ("Marcellin Decl.")], and the Return to the Petition and attached exhibits [ECF Nos. 15, 15-1 ("Notice and Order of Expedited Removal"), 15-2 ("Order of Supervision"), 15-3 ("Notice of Revocation of Release")].  Where allegations in the Petition are contradicted by the Return, the Court credits the Return because, by statute, "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."  28 U.S.C. § 2248.  Here, Petitioner has not submitted any evidence to traverse the Return.  Indeed, Plaintiff declined to submit any reply in further support of the Petition.

[3] "Petitioner was determined to be inadmissible pursuant to section 212 (a)(7)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(7)(A)(i), and therefore subject to Expedited Removal under the provision of section 235(b)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1225(b)(1)."  Marcellin Decl. ¶ 4.  As such, "CBP issued and served Petitioner an expedited removal order" on the day it encountered and apprehended her near the border.

[4] Petitioner, in one paragraph of the Petition, asserts in passing that "she entered legally."  Pet. ¶ 31.  However, she elsewhere makes clear that she entered the United State "unlawfully," "without inspection."  *Id.* ¶¶ 3, 4.  In any event, the Return establishes that Petitioner illegally entered this country twice, in both 2012 and 2019.  *See* Marcellin Decl. ¶¶ 3, 6; 28 U.S.C. § 2248.

[5] The Court notes that Petitioner alleges that her child has obtained "obtained Special Immigrant Juvenile Status."  Pet. ¶ 5.  This allegation does not change the Court's analysis.

2

custody by CBP and "was processed as a Reinstatement of a Prior Order of Removal" pursuant to 8 U.S.C. § 1231(a)(5). Marcellin Decl. ¶¶ 6, 7; *see* 8 U.S.C. § 1231(a)(5) ("If . . . an alien has reentered the United States illegally after having been removed . . . under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, . . . and the alien shall be removed under the prior order at any time after the reentry."). Petitioner was released from custody on an Order of Supervision in late April 2019 [ECF No. 15-2 ("Order of Supervision")]. Marcellin Decl. ¶ 8.

The Order of Supervision reflects that Petitioner is subject to an earlier, now reinstated, order of removal. *See* Order of Supervision at 1. It imposes numerous conditions, including a requirement that Petitioner "appear in person at the time and place specified, upon each and every request of the agency, for identification *and for deportation and removal*." *Id.* (emphasis added). The Order of Supervision reflects that Petitioner "acknowledge[d]" that she was required "to comply with the terms of th[e] order." *Id.* From late April 2019 through January 10, 2026, "Petitioner was not in ICE custody" and "periodically reported to ICE as per the conditions of her" Order of Supervision. Marcellin Decl. ¶ 9.

"On January 10, 2026, Petitioner reported to ICE at 26 Federal Plaza, New York, New York," and "ICE took her into custody and revoked her [Order of Supervision] based upon her reinstated removal order" [ECF No. 15-3 ("Notice of Revocation of Release")]. Marcellin Decl. ¶ 10. The Notice of Revocation of Release states: "[Y]our order of supervision has been revoked and you will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time." Notice of Revocation of Release. It further explains that Petitioner was previously "ordered removed to Honduras" and that "ICE has determined that [she] can be expeditiously removed from the United States pursuant to the outstanding order of removal." *Id.* The Notice of

Revocation of Release states that Petitioner will receive "a new review" of the decision to detain her "within approximately three months." *Id.*

The next day, January 11, 2026, Petitioner, through counsel, filed a petition for a writ of habeas corpus [ECF No. 1 (the "Petition" or "Pet.")] together with a motion for emergency relief [ECF No. 2], seeking her immediate release from ICE custody. [6]  The Petition, which says nothing about Petitioner's earlier Order of Expedited Removal and removal from the United States, asserts that Petitioner should be released because she "has been unlawfully detained without the possibility of a bond." Pet. ¶ 3.  The Petition repeatedly asserts that Petitioner is entitled to a bond hearing under 8 U.S.C. § 1226(a) ("Section 1226(a)").  *See id.* ¶¶ 10, 11, 12, 13, 16, 30, 35, 38, 49, 55, 62.  The Petition specifies that "[t]his case challenges Respondents' [purported] erroneous decision that Petitioner is subject to mandatory detention without bond under §1225(b)(2), rather than being bond-eligible under § 1226(a)." *Id.* ¶ 38.  The Petition further specifically asserts that "Section 1231," which "provides for detention of noncitizens who have already been ordered removed," simply "is not relevant here." *Id.* ¶ 37.

Within a day of Petitioner filing her application for relief, the Court ordered the government to respond to the Petition and motion for emergency relief and set a deadline for any reply [ECF No. 4].  Thereafter, the government requested three extensions of time to respond and, in each instance, represented that it had "attempted but been unable to reach petitioner's counsel to request consent" for the extension [ECF No. 5 at 1; *see* ECF Nos. 7, 9].  The Court granted the first two extensions and largely denied the third request, warning that "[b]oth parties, especially the

---

[6] At some unspecified time, Petitioner separately filed an application for asylum and withholding of removal, which apparently remains pending.  Pet. ¶ 32; Marcellin Decl. ¶ 12.  That application does not change the Court's conclusion that Petitioner is lawfully subject to detention pending removal pursuant to 8 U.S.C. 1231(a) because she is subject to the final order of removal that issued before she illegally reentered the country.  *See* 8 U.S.C. § 1231(a)(5) ("If . . . an alien has reentered the United States illegally after having been removed . . . under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, . . . and the alien shall be removed under the prior order at any time after the reentry."); Notice and Order of Expedited Removal.

government, are on notice that failure to comply with court orders and all applicable procedural rules may result in sanctions" [ECF Nos. 6, 8, 10].

Thereafter, the government filed a memorandum of law [ECF No. 13 ("Opp.")], the Declaration of Supervisory Detention and Deportation Officer Merlin Marcellin [ECF No. 14 ("Marcellin Decl.")], and a Return attaching exhibits [ECF No. 15]. The government argues that, because Petitioner is subject to a final order of removal, ICE has statutory authority to detain Petitioner pending her removal under 8 U.S.C. § 1231(a) ("Section 1231(a)"), which statute, unlike Section 1226(a), does not provide for a bond hearing. *See* Opp. at 2, 7. The government further argues that ICE had discretion to revoke Petitioner's release on the Order of Supervision in order to enforce her earlier, reinstated order of removal. *See id.* at 7.

Petitioner did not file a reply in further support of her Petition and motion for emergency relief by the deadline the Court had imposed.[7] In order to afford Petitioner a full opportunity to be heard, especially since the government's opposition papers contradicted the sole argument for release asserted in the Petition (*i.e.*, that Petitioner is entitled to a bond hearing under Section 1226(a)), the Court set a new, later deadline for Petitioner to file a reply [ECF No. 16]. The Court warned: "**Petitioner is on notice that failure to file a reply by [the new] date will be deemed a waiver of the opportunity to do so**" [ECF No. 16 (emphasis in original)]. Petitioner, however, never filed a reply, or anything else, thereafter.

## II.    DISCUSSION

Petitioner argues in the Petition that she should be released from ICE custody because she has been detained without a bond hearing in violation of Section 1226(a) and the Due Process Clause of the Constitution of the United States. *See* Pet. ¶¶ 10, 11, 12, 13, 16, 30, 35, 38, 49, 55,

---

[7] Indeed, Petitioner has not filed a single submission since initiating this action, and the government represents that it has repeatedly attempted to contact Petitioner's counsel without success [*see* ECF Nos. 5, 7, 9].

59–67. This argument is the sole basis for relief Petitioner has identified. *See generally* Pet.; This argument, however, bears no relation to the facts in the record before the Court and the law applicable to those facts.

By statute, under Section 1231(a), ICE has authority to detain an alien who is subject to a final order of removal. *See* 8 U.S.C. § 1231(a); *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 580 (2022). Specifically, Section 1231(a) provides that "the Government 'shall' detain" an alien who has been ordered removed for a 90-day "removal period" during which "the Government generally must secure the noncitizen's removal." *Arteaga-Martinez*, 596 U.S. at 578 (quoting 8 U.S.C. § 1231(a)(2). Section 1231(a) further provides that the Government "may" continue to detain certain aliens beyond the 90-day removal period. 8 U.S.C. § 1231(a)(6); *see Arteaga-Martinez*, 596 U.S. at 578–79. In particular, the statute provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the [Executive Branch] to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6). Thus, the Government has statutory authority to continue to detain an alien who has been ordered removed if the alien is: (1) inadmissible, (2) removable for national security reasons, (3) a risk to the community, "or" (4) "unlikely to comply with the order of removal." *Id.*; *see Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021).

Petitioner acknowledges the Government's clear authority under Section 1231(a) to detain aliens who have been ordered removed from the country. Indeed, Petitioner expressly notes that the statute "provides for detention of noncitizens who have already been ordered removed." Pet. ¶ 37 (citing 8 U.S.C. § 1231). She asserts that "Section 1231 is not relevant here." *Id.*

The record before the Court, however, establishes that Section 1231(a) is not only relevant,

6

but also fatal to the Petition.  As explained above, Petitioner here has been ordered removed.  Specifically, she previously was ordered removed, and was in fact removed, to Honduras.  *See* Notice and Order of Expedited Removal; Marcellin Decl. ¶ 5.  Thereafter, Petitioner illegally reentered the country, and her previous order of removal was reinstated.  *See* Marcellin Decl. ¶¶ 6, 7; 8 U.S.C. § 1231(a)(5) ("If . . . an alien has reentered the United States illegally after having been removed . . . under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, . . . and the alien shall be removed under the prior order at any time after the reentry.").  The Court provided Petitioner with several opportunities to rebut or dispute this record, but she has declined to do so [*see* ECF Nos. 4, 16].  As such, on the record before the Court, Petitioner effectively concedes that Section 1231(a) provides for her detention because she has "already been ordered removed."  Pet. ¶ 37.

Furthermore, there is no question that Plaintiff is subject to continued detention, beyond 90 days, under Section 1231(a).  Petitioner meets the first statutory criteria for continued detention because it has been determined that she is "inadmissible."  8 U.S.C. § 1231(a)(6); *see Guzman Chavez*, 594 U.S. at 529; Marcellin Decl. ¶ 4 ("Petitioner was determined to be inadmissible").  It also seems clear that Petitioner could be found "unlikely to comply with [her] order of removal," 8 U.S.C. § 1231(a)(6), since she in fact disregarded the Notice and Order of Expedited Removal when she illegally reentered the United States after being removed pursuant to that final order of removal, *see* Marcellin Decl. ¶ 6.

The Court is, of course, aware that, in *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that Section 1231(a) does not "authorize indefinite, perhaps permanent, detention." *Zadvydas*, 533 U.S. at 699.  Instead, the Supreme Court held, the statute authorizes detention for

the "period reasonably necessary to secure removal." *Id.*[8]  In particular, the Supreme Court held that it is "presumptively reasonable" to detain an alien who has been ordered removed for a period of six months. *Id.* at 701.  Thereafter, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*  Pursuant to regulations codified at 8 C.F.R. § 241.4, ICE repeatedly reviews whether to continue to detain an alien who has been ordered removed and remains in ICE custody after 90 days.  *See* 8 C.F.R. § 241.4.

Here, Petitioner has not challenged the length of her post-removal-order detention.  Rather, she expressly asserted—without explanation or even acknowledgment of her previous order of removal—that Section 1231 simply "is not relevant" to her Petition.  Pet. ¶ 37.  Further, the Court notes, when ICE revoked Petitioner's Order of Supervision and detained her, ICE advised Petitioner that she would receive "a new review" of the decision to detain her "within approximately three months," pursuant to the Section 1231 implementing regulations.  *See* Notice of Revocation of Release at 1 (citing 8 C.F.R. § 241.4).  Petitioner has not suggested that she has not received such a review.  Indeed, Petitioner has not availed herself of the opportunity, which the Court provided [*see* ECF Nos. 4, 16], to raise any arguments challenging her lawful post-removal-order detention under Section 1231(a).

As such, the Petition is DENIED in its entirety.

### III.    CONCLUSION

For the reasons set forth above, the Petition is DENIED.  The Clerk of Court respectfully

---

[8] As the Supreme Court has later commented, the issue in *Zadvydas* was the indefinite detention of aliens who languish in ICE custody for years on end in "removable-but-unremovable limbo" because no country will accept them. *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 347 (2005).  That does not appear to be an issue in this case, where Petitioner previously has been successfully removed to Honduras, and there is no indication that she cannot be so removed again. *See* Marcellin Decl. ¶ 5.

is requested to terminate the motion at docket entry number 2 and to close this case.

**SO ORDERED.**

**Date:   July 17, 2026**
      **New York, NY**

                                   **MARY KAY VYSKOCIL**
                                   **United States District Judge**

9